## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

LARRY SURATT                                        CIVIL ACTION NO. 07-1165

VS.                                                 SECTION P

BURL CAIN, WARDEN                                   JUDGE MELANCON

                                                    MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. §2254 by *pro se* petitioner, Larry Suratt, on July 11, 2007.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections, incarcerated at the Louisiana State Penitentiary, in Angola, Louisiana.  Petitioner challenges his April 6, 2005 second degree murder convictions, entered in the Thirteenth Judicial District Court for Evangeline Parish. This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## PROCEDURAL HISTORY

Following a jury trial, on April 6, 2005, petitioner was convicted of the second degree murders of Larry Cook and Shelia Kirby whose bodies were found in a bayou between Evangeline Parish and Rapides Parish, Louisiana.  Prior to their deaths, the victims had apparently been living with petitioner and his co-defendant Cynthia Anderson

in their home located in St. Landry Parish, Louisiana.  Petitioner was sentenced to concurrent life sentences on May 19, 2005.

Prior to trial, petitioner filed a Motion to Quash his indictment alleging that venue was improper in Evangeline Parish.  After denial of the Motion by the trial court, the Louisiana Third Circuit Court of Appeal accepted petitioner's request for pre-trial writs. After full briefing and oral arguments, the Third Circuit denied writs, finding that the Louisiana venue provision did not provide for the unique situation where the body of a murder victim is found in a particular parish, but where the prosecution could not establish the parish in which the murder took place.  Under Louisiana law, the court therefore exercised its inherent authority to fashion a remedy which promoted justice. Thus, because it would be an injustice to hold that the State could not try petitioner for the murders merely because it could not establish the geographical location of the murders, the court held that Evangeline Parish,  the parish in which the bodies were found, was a court of proper venue.  *See State v. Anderson*, 877 So.2d 336, 344-345 (La.App. 3rd Cir. 7-7-04) and *State v. Surratt*, 877 So.2d 345 (La.App. 3rd Cir. 7-7-04).

Effective August 15, 2004, the Louisiana legislature amended article 611 to provide that in murder cases where it is unknown where the offense occurred, venue is proper in the parish where the body of the victim is found. L.C.Cr.P. art. 611(B); Louisiana Acts 2004, No. 379, § 1.

After being convicted in Evangeline Parish of both murders on April 6, 2005, petitioner appealed his convictions to the Third Circuit Court of Appeals where he argued, among other claims, that  the case was tried in a court of improper venue and that his jury pool was tainted.  On June 7, 2006, petitioner's convictions were affirmed.  On July 19, 2006, petitioner's request  for rehearing was denied. S*tate v. Surratt*, 932 So.2d 736 (La. App. 3rd Cir. 2006).

Petitioner's request for writs in the Louisiana Supreme Court was denied without comment on June 1, 2007. *State v. Surratt*, 957 So.2d 165 (La. 2007), *reconsideration denied*, 963 So.2d 386 (La. 9-14-07).   In the writ application, counsel argued only two grounds for relief under Louisiana state law: (1) that the Third Circuit Court of Appeal erred in allowing the prosecution to continue in Evangeline Parish, a court if improper venue under L.C.Cr.P. article 611, and in  "legislat[ing]" into existence a new venue provision under L.C.Cr.P. article 17, and then applying an allegedly substantive change in the law retroactively to petitioner and, (2) that the lower courts failed to order a mistrial as required under L.C.Cr.P. arts. 770 and 775 based on allegations that petitioner's  jury pool was fatally tainted when deputies talked openly among prospective jurors about a knife or "shank" allegedly found in Suratt's cell, with which he planned to escape, causing the need for heightened security. [*See* doc. 1-4]**.**

Petitioner filed the instant petition for writ of *habeas corpus* on July 11, 2007, asserting the same two claims raised on direct appeal in the Louisiana Supreme Court.

3

For the following reasons, the undersigned recommends that the instant petition be dismissed with prejudice because petitioner's claims are not cognizable on federal *habeas* review and alternatively, because the claims fail on the merits.

## LAW AND ANALYSIS

### Claim 1- Improper Venue

In his first claim for relief in this court, petitioner argues that the Louisiana courts misapplied Louisiana state law to find Evangeline Parish was a court of proper venue for his murder trial.  In support of his claim, petitioner cites Louisiana constitutional and statutory provisions, and Louisiana jurisprudence, interpreting those provisions.[1]  In neither this, nor in the Louisiana courts, did petitioner argue that this alleged error was in violation of his federal constitutional rights.  To the contrary, his claim was asserted solely under Louisiana state law.

In both pre-trial proceedings and on direct appeal after petitioner's conviction, the Louisiana Third Circuit Court of Appeal, the last state court to issue a reasoned decision on the merits, found that under Louisiana law, Evangeline Parish was a court of proper venue for petitioner's murder trial as that was the parish in which the murder victims' bodies were found.  Petitioner's challenge to the correctness of that holding was rejected

---

[1]  Petitioner cites Article I, Section 16 of the Louisiana Constitution, L.C.Cr.P. art. 611, L.C.Cr.P. art. 615; L.C.Cr.P. art. 17 and La.R.S.1:2, as well as  the following Louisiana jurisprudence: *State v. Douglas*, 278 So.2d 485 (La. 1973); *State v. Jackson*, 308 So.2d 265 (La. 1976); *State v. Mims*, 329 So.2d 686 (La. 1976); *State v. Edwards*, 287 So.2d 518; *State v. Kyles*, 706 So.2d 611 (La. App. 4th Cir. 1998); *State v. Peart*, 621 So.2d 780 (1993); *State v. Leonard*, 394 So.2d 1222 (La. 1981); *St. Paul Fire and Marine Ins. Co. v. Smith*, 609 So.2d 809 (La. 1992); *Graham v. Sequoya Corp*. 478 So.2d 1223 (La. 1985); and *Threatts v. Derouselle*, 636 So.2d 276 (La. App. 3 Cir. 1994).

on application for rehearing in the Louisiana Third Circuit Court of Appeal and thereafter by the Louisiana Supreme Court on original request for writs and on request for reconsideration of the denial of writs.

28 U.S.C. §2254(a) provides that federal courts "shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Thus, when reviewing  applications for *habeas corpus*, federal courts will only review allegations of deprivations of federal constitutional rights. *Deters v.  Collins*,  985 F.2d 789, 791 fn.  1 (5th Cir.  1993) *citing* 28 U.S.C. §2254(a). Accordingly,  "[a] federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  *Estelle v.  McGuire*, 502 U.S. 62, 68, 112 S.Ct.  475, 480 (1991).  Therefore, "a 28 U.S.C. §2254 applicant must claim violation of a federal constitutional right."  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). This is so because federal courts "do not sit as a super state supreme court ...." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.  1983).  It is not the province of a federal *habeas* court to determine if the state courts properly applied state law.  *Estelle v.  McGuire*, 502 U.S. at 68, 112 S.Ct. at 480; *Narvaiz*, 134 F.3d at 695.   Rather, "[f]ederal habeas corpus review is limited to errors of constitutional dimension ...."  *Castillo v.  Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).  Thus, the Fifth circuit has articulated on numerous occasions that the failure of a state to follow its own  rules of  procedure is not grounds for relief in

federal *habeas* actions.  *Lavernia v. Lynaugh*, 845 F.2d 493, 495 (5th Cir. 1988)

("[f]ederal habeas courts are without authority to correct simple misapplications of state

criminal law or procedure ..."); *Manning v. Warden*, 786 F.2d 710, 711-12 (5th Cir. 1986)

("whether the state followed its own procedure is not the concern of a federal *habeas*

court ...").

  Review of petitioner's pleadings in both this and the Louisiana courts  reveals that

petitioner has presented his first claim for relief solely under state law.  Petitioner argues

this claim under Louisiana state law, namely, as contrary to the Louisiana Constitution

article 1, § 16, as improper applications of L.C.Cr.P. articles 611 (venue for criminal

trials) and 615 (governing burden of proof for venue), and with respect to the alleged

retroactive application of the rule devised by the appellate court, improper applications of

L.C.Cr.P. art. 17 (setting forth inherent powers of Louisiana state courts)and La.R.S.1:2

(providing that Louisiana Revised Statutes are not retroactive unless so stated).   In

support of his argument, petitioner cites Louisiana state court decisions interpreting these

provisions.  There is no mention or argument of any federal constitutional issue or any

federal law supporting such a claim which could alert any court that petitioner's claim

could arise under federal law.  Indeed, and apparently for this reason, the last reasoned

Louisiana state court decision on this claim, that of the Louisiana Third Circuit Court of

Appeals, was rendered entirely on state law grounds.  For this reason, petitioner's first

claim for relief, that the Louisiana courts misapplied Louisiana state law to find

Evangeline Parish was a court of proper venue for his murder trial is not cognizable on federal *habeas* review and should be dismissed.

To the extent that petitioner's arguments could be construed as asserting an *ex post facto* violation, that claim is without merit.  Article I of the United States Constitution provides that neither Congress nor any State shall pass any "*ex post facto* Law." *See* Art. I, § 9, cl. 3; Art. I, § 10, cl. 1.  A law is a violation of the *Ex Post Facto* Clause if it operates retroactively to (1) make previously innocent conduct criminal, (2) aggravate a crime, or make it greater than it was, when committed (3) change or increase the punishment for a crime after its commission, or (4)  alter the legal rules of evidence, and receive less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.  *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798); *Collins v. Youngblood*, 497 U.S. 37 (1990); *Carmell v. Texas*, 529 U.S. 513, 120 S.Ct. 1620 (2000).  In particular, the Court has held that "a law changing the place of trial from one county to another county in the same district, or even to a different district from that in which the offence was committed, or the indictment found, is not an *ex post facto* law, though passed subsequent to the commission of the offence or the finding of the indictment" because such laws do not come within any of the Court's definitions of an *ex post facto* violation. *Gut v. Minnesota,* 76 U.S. 35 (1869).

The prohibition against *ex post facto* laws, however, does not give a criminal defendant a right to be tried, in all respects, by the law in force when the crime was

committed.  *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)

citing *Gibson v. Mississippi*, 162 U.S. 565, 590 (1896).  The constitutional provision was

not intended to limit the legislative control of remedies and modes of procedure which do

not affect matters of substance.  *Id. citing Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70

L.Ed. 216 (1925); *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351

(1987) *quoting Dobbert*, 432 U.S. at 293 ("[N]o *ex post facto* violation occurs if a change

does not alter 'substantial personal rights,' but merely changes 'modes of procedure

which do not affect matters of substance.' ").  Indeed, the Court has indicated that venue

provisions are one such mode of procedure which do not transgress the Constitutional

prohibition.  *See Beazell*, 269 U.S. at 171 *citing Gut*; *see also U.S. v. Juvenile Male*, 819

F.2d 468, (4th Cir. 1987) (noting that laws which retroactively change venue rules are

procedural and do not violate the *ex post facto* clause).  Thus, the Supreme Court has long

held that procedural changes in the law may be applied retroactively without violating the

Constitution's ban on *ex post facto* laws.  *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct.

2290, 53 L.Ed.2d 344 (1977) (change in role of Florida juries in death penalty cases);

*Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (defendant forced to

undergo joint rather than separate trial for crime); *Mallett v. North Carolina*, 181 U.S.

589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901) (state allowed to appeal from intermediate

court's award of new trial to defendant); *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct.

922, 43 L.Ed. 204 (1898) (prior to second trial, law was changed to make circumstantial

evidence admissible against defendant and he was convicted); *Gibson v. Mississippi*, 162

U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896) (change in juror qualifications); *See also*

*Lindh v. Murphy*, 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (noting that

if the statute at issue "were merely procedural in a strict sense (say, setting deadlines for

filing and disposition ...), the natural expectation would be that it would apply to pending

cases."). Moreover, the Supreme Court has held that procedural changes, even if they

work to the disadvantage of a criminal defendant, do not violate the *ex post facto* clause.

*Collins v. Youngblood*, 497 U.S. 37 (1990); *Dobbert*, 432 U.S. at 293. *See also Creel v.*

*Kyle*, 42 F.3d 955, 958 (5th Cir.1995).

 Here, it is clear that the change in Louisiana's venue provision permitting trial in a

parish where the murder victim's body is found, which was effective at the time of

petitioner's trial but not at the time of petitioner's alleged criminal conduct, does not

implicate the *ex post facto* clause because the change does not fall within the definition of

an *ex post facto* violation set forth above and because the change in law was procedural

rather than substantive. *See Gut, Beazell*, *supra.* Article 611 is a legislative mode of

procedure that does not affect matters of substance. More specifically, the article does

not make previously innocent conduct a crime, it does not increase the punishment for, or

change the essential elements of, the charged offense, murder, nor does the article change

the ultimate facts the State must prove to establish guilt of murder, or lower the burden of

9

proof to obtain a conviction for murder.[2]  Accordingly, the application of article 611 to

petitioner's criminal conduct did not constitute a prohibited retroactive application of law,

and as such petitioner has stated no viable *ex post facto* claim.

**Claim 2 - Denial of Mistrial for Jury Taint**

In his second claim for relief, petitioner argues that the state courts erred by failing

to order a mistrial after prospective jurors allegedly overheard deputies talking about a

knife that had been found in petitioner's cell, with which he planned to escape and

necessitating the need for heightened security.

Review of petitioner's filings in this and the Louisiana state courts reveals that

petitioner did not raise his claim under federal law, or more specifically, any amendment

to the United States Constitution.  There is no mention or argument of any federal

constitutional issue which could have alerted either court that his claim could arise under

federal law.  Petitioner does not cite any amendment to the United States Constitution in

support of his argument nor does he cite any federal jurisprudence.[3]  Rather, in both this

and the Louisiana state courts, petitioner asserted this claim solely on state law grounds.

---

[2] Indeed, article 615 expressly states that "]v]enue shall not be considered an essential element to be proven by the state at trial."

[3] "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief ... by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' " *Howell v. Mississppi,* 543 U.S. 440, 125 S.Ct. 856, 859 (2005) citing *Baldwin,* 541 U.S. at 32.  This is necessary to establish that a federal question was properly presented to a state court.  *Id.*  Moreover, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised.  *Bell v. Cone,* 543 U.S. 447, 125 S.Ct. 847, 851 at fn. 3 (2005) citing *Baldwin,* 541 U.S. at 30- 32.

Petitioner argues that a mistrial was mandated under L.C.Cr.P. article 770 (outlining mandatory grounds for grant of a mistrial) because the comments were made by deputies who he contends are court officials under the statute, and alternatively, that a mistrial was warranted under article 775 (outlining discretionary grounds for grant of a mistrial). Accordingly, when addressing this issue on direct appeal, the Louisiana Third Circuit Court of Appeal, the only court which issued a reasoned opinion on the merits of petitioner's claim,  analyzed the claim under Louisiana standards.[4]

It is not the province of a federal *habeas* court to determine if the state courts properly applied state law.  *Estelle v.  McGuire*, 502 U.S. at 68, 112 S.Ct. at 480; *Narvaiz*, 134 F.3d at 695.   Rather, "[f]ederal *habeas corpus* review is limited to errors of constitutional dimension ...."  *Castillo*, 141 F.3d at 222. Therefore, to be entitled to relief, "a 28 U.S.C. §2254 applicant must claim violation of a federal constitutional right." *Narvaiz*, 134 F.3d at 695.  This petitioner has not done.  For this reason, petitioner's second claim for relief, that a mistrial should have been ordered on grounds that his jury pool had been tainted, is not cognizable on federal *habeas* review and should be dismissed.

---

[4]The Third Circuit held that a deputy is not considered a court official within the meaning of article 770; hence mandatory mistrial was not required.  Distinguishing *State v. Roman*, 473 So.2d 897 (La. App. 3 Cir. 1985) and finding the facts similar to *State v. Daniels*, 740 So.2d 691 (La. App. 2 Cir. 1999), *writ denied*, 749 So. 2d 651, the court held that the exercise of a discretionary grant of a mistrial under article 775 was not warranted.  This was so because out of twenty-eight potential jurors, petitioner pointed to only four potential jurors as possibly tainted, and only one of which, who heard nothing connecting any rumors to petitioner, actually served on petitioner's jury. *See Surratt*, 932 So.2d at 753-754.

To the extent that petitioner could argue that the alleged error violated his constitutional right to due process, that claim has never been presented to the Louisiana state courts and hence, is both unexhausted and "technically" procedurally barred. *See Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir.1998); *Coleman v. Thompson*, 501 U.S. 722, 731-33, and 735 fn.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999); *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); and *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998).  Moreover, although petitioner makes a fleeting reference at the end of his argument that the grant of a mistrial was mandated "to assure a fair and impartial trial ..." [*see* rec. doc. 1-3, pg. 28; 1-4, pg. 24] such passing, vague or fleeting references do not sufficiently afford the state court the opportunity to address an alleged violation of federal rights and hence, do not constitute a "fair presentation" for exhaustion purposes.  *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001).

Nevertheless, even if such a claim had been properly exhausted and was not procedurally barred, the claim fails on the merits.  Generally, under Louisiana law, determination of whether a mistrial should be granted is within the sound discretion of the trial court, and that determination will not be disturbed absent an abuse of discretion. *See State v. Fugler,* 737 So.2d 894, 895 (La. App. 1ˢᵗ Cir. 1999) citing *State v. Berry,* 684 So.2d 439, 449 (La. App. 1ˢᵗ Cir. 1996); *State v. Duval,* 747 So.2d 793, 797 (La.App. 1ˢᵗ

12

Cir. 1999); L.C.Cr.P. art. 775.  A mistrial is a drastic remedy and is only warranted when the defendant has suffered substantial prejudice. *Fugler,* 737 So.2d at 895; *Berry,* 684 So.2d at 449; *Duval,* 747 So.2d at 797; *State v. Edwards,* 420 So.2d 663, 679 (La.1982); *State v. Harris*, 812 So.2d 612, 617 (La. 2002).  In order to obtain federal *habeas corpus* relief on grounds of trial error, the petitioner must show more than prejudice to his substantial rights.  *Kirkpatrick v. Blackburn,* 777 F.2d 272, 279 (5th Cir.1985).  The petitioner must establish that the trial error was not merely an abuse of discretion, but also was so grave as to amount to denial of his constitutional right to due process, that is, that the error rendered the trial fundamentally unfair.  *Id.*  A trial is fundamentally unfair only when there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *Id.*

In this case, petitioner has not established that the denial of his motion for a mistrial constituted to an abuse of discretion, or that the denial made his trial fundamentally unfair.  As found by the Third Circuit Court of Appeal, of the twenty-eight potentially tainted jurors questioned, petitioner points to only four as possibly tainted, and only one, Ms. Deculus, who informed the court that she heard an officer say that the courthouse was searched around 7:00 the previous day, actually served on petitioner's jury.  Considering that the potential jurors were questioned individually, that twenty-four of the twenty-eight stated they had heard nothing, and that the only potentially tainted juror who actually served on petitioner's jury heard nothing which could connect the

13

courthouse search to petitioner, petitioner has not demonstrated that his trial was fundamentally unfair. Under the circumstances, the trial court acted within its discretion when it denied petitioner's motion, and the denial of the motion did not render petitioner's trial so fundamentally unfair so as to violate petitioner's due process rights. Petitioner has not established sufficient prejudice amounting to a denial of fundamental fairness.  Therefore this claim has no merit.

Finally,  even if petitioner's claim could be construed as a due process claim and hence, as cognizable on federal *habeas* review, this court must defer to the state appeals court's decision on the merits unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2); *See also Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166 (2003).  Petitioner has made no argument to this effect.   Thus, because petitioner has not demonstrated that the state appeals court's decision was contrary to, or an unreasonable application of,  the Supreme Court's jurisprudence, and has not demonstrated that the decision was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, under the applicable standard of review, petitioner's claim does not warrant federal *habeas corpus* relief.  *See Smith v. Cain,* 253 F.3d 700 (5ᵗʰ Cir. 2001) (unpublished).

For the reasons set forth above;

**IT IS RECOMMENDED** that the instant petition be **DISMISSED WITH PREJUDICE** because petitioner's claims are not cognizable on federal *habeas* review, and alternatively, because the claims fail on the merits.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, this 11th day of March, 2008.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE